Robert S. BROOKS, individually and as Personal Representative of the Estate of Patricia Brooks, Plaintiff–Appellant,

v.

The UNITED STATES of America and Walter M. Pelzer, D.O., Defendants–Appellees.

No. 85–3947.

United States Court of Appeals, Eleventh Circuit.

Feb. 17, 1988.

Maura T. Smith, Smith, Mackinnon & Mathews & Harris, Orlando, Fla., for plaintiff-appellant.

G.B. McVay Voght, J. Charles Ingram, Hannah, Marsee, Beik & Voght, Orlando, Fla., for Pelzer.

Walter Postula, Asst. U.S. Atty., Orlando, Fla., for U.S.

Before RONEY, Chief Judge, GODBOLD*, Senior Circuit Judge, and ATKINS**, Senior District Judge.

GODBOLD, Senior Circuit Judge.

Plaintiff sued the United States and Dr. Walter Pelzer, a private osteopathic physician, alleging wrongful death and medical malpractice. Plaintiff's wife, Patricia Brooks, a military dependent age 53, died at her home on May 8, 1983, of bilateral bronchial pneumonia. Brooks, individually and as personal representative of the estate of his wife, alleged that the care she received at the emergency room of the Navy Regional Medical Center, Orlando, Florida, on May 4, 1983, and from Dr. Pelzer on the following day, deviated from the appropriate levels of care and proximately caused her death.

When Mrs. Brooks was seen at the Naval Emergency Room on May 4 a physician examined her mouth, throat and lungs, and diagnosed her condition as upper respiratory illness, non-urgent,[1] and referred her to the hospital's Ear, Nose, and Throat Clinic for an appointment, which was set for 30 days later. The emergency room physician testified at trial that she exhibited no indications of pneumonia. He prescribed medication to suppress her cough, instructed her on general care for her upper respiratory illness, and told her to return if her condition worsened.

Mrs. Brooks was dissatisfied with her treatment at the Naval Center, and the following day she went to see Dr. Pelzer, a private osteopathic physician. He had served as family physician for other members of her family, but this was the first time that Mrs. Brooks had seen him. Dr. Pelzer diagnosed her as being quite ill with pneumonia. He testified at trial that he recommended hospitalization, which she refused, and that he then recommended that she stay off from work and rest at home, which she agreed to do, and he prescribed several medications. He scheduled an appointment for the following week and instructed her to call him if her condition did not improve or worsened.

Mrs. Brooks did not communicate further with the Naval Center, nor did she call Dr. Pelzer or return to his office. She died at home three days after having seen Dr. Pelzer.

The claim against the United States was tried nonjury concurrently with a jury trial of the claim against Dr. Pelzer. At the close of the plaintiff's case the court granted the government's Rule 41(b) motion for involuntary dismissal and Dr. Pelzer's motion for directed verdict. The court announced oral findings and conclusions with respect to both claims and later entered formal written findings and conclusions.

There are two issues to be decided on this appeal. First, whether the involuntary dismissal granted to the government must be reversed because plaintiff was barred from using Dr. Mario Rojkind as a expert witness. Second, whether the court erred in granting a directed verdict in favor of Dr. Pelzer. On both issues we reverse.

I. The "striking" of Dr. Rojkind as an expert witness

■ This issue springs from a breakdown in discovery. The record in this case contains a long history, with numerous chapters, of discordant relations between counsel. It sets out numerous incidents, and many other charges, of misunderstandings and breaches of agreements between counsel, egregious discourtesies, charges and counter-charges of fraud and untruth by counsel, and a host of other unpleasant subjects. This case is the antithesis of the availability, and the orderly exchange, of

---

* *See* Rule 34–2(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit.
** Hon. C. Clyde Atkins, Senior U.S. District Judge for the Southern District of Florida, sitting by designation.

1. Mrs. Brooks was a heavy smoker, and she had been treated by the same Navy physician for oral cancer in 1981.

information envisioned by discovery procedures under the federal rules.

The particular events of concern to this appeal are:

July 5, 1985: Plaintiff mailed supplemental answers to interrogatories listing these expert witnesses: Dr. Mario Rojkind, Board certified in emergency medicine, and Dr. James Bomhard, physician, family practice, as experts to testify on the "standard of care required and breach by defendants"; Frederick Raffa, economics professor, expert to testify on damages; and Dr. Edward Willey, physician, a non-testifying expert consulted by plaintiff.

July 8: The court ordered that the cutoff for discovery was extended to July 22, and the case was set for trial on a docket commencing August 5.[2]

July 9: Plaintiff learned that Dr. Bomhard would not be available to testify at trial.

July 10: Plaintiff informed defense counsel that he would be replacing Dr. Bomhard with Dr. Steven Van Ore, Board certified in family practice.

July 12: Plaintiff mailed amended supplemental answers to interrogatories. Dr. Rojkind was identified as Board certified in E.R. (emergency room practice) and Dr. Van Ore as Board certified in family practice, with each to testify as to "standard of care required and breach by defendants."

Defendant Dr. Pelzer gave notice that he would take the deposition of Dr. Van Ore in Maitland, Florida on July 16 at 5:30 p.m. and Dr. Rojkind in Boca Raton, Florida on July 19 at 2:00 p.m.

July 15: The United States gave cross notices that it would take the depositions of Dr. Van Ore and Dr. Rojkind at the times and places already designated by Dr. Pelzer.

July 16: Deposition of Dr. Van Ore was taken by defendants.

July 18, 2:58 p.m.: Without prior notice to plaintiff, Dr. Pelzer's counsel filed a motion captioned as an emergency motion to strike Dr. Rojkind as an expert witness, the body of which prayed that Dr. Rojkind be "struck" from testifying or appearing as a witness in the case. Counsel certified that this was hand-delivered to plaintiff that day; the time was not stated. The motion stated that on June 26 counsel had discussed between themselves the taking of depositions of experts, and it was understood that the extension of discovery time granted July 8 was "to complete known discovery and to depose experts existing at the time discovery was enlarged." It was alleged that Drs. Van Ore and Rojkind were newly retained by plaintiff as experts after the July 8 extension and that this belated action by plaintiff had created extreme hardship on defendants, who were "having to travel around the state in an attempt to complete discovery prior to July 22, 1985," and had precluded defendants from being able to propound interrogatories to the plaintiff concerning the two experts. The Pelzer motion stated, however, that since Dr. Van Ore's deposition already had been taken Dr. Pelzer would not object to use of him as a witness.

Contemporaneously with the motion Dr. Pelzer filed a memorandum that, *inter alia*, asserted that plaintiff already had one expert witness (Dr. Van Ore) and would not be prejudiced by the court's striking Dr. Rojkind as an additional expert.

5:00 p.m.: The government filed its motion to strike. It joined in Dr. Pelzer's motion and alleged that plaintiff had disrupted the orderly process of discovery. It added a new ground: that defendants would be unable to secure additional experts to rebut Dr. Rojkind's testimony since they had long ago "committed themselves to singular expert witnesses" and there was no time to find other experts.

Approximately 5:00 p.m.: The motions were presented to the magistrate with counsel for one or both defendants present and plaintiff's counsel not present.

---

**2.** This order laid to rest earlier conflicting entries governing discovery that need not be repeated here.

Approximately 5:00 p.m.: Magistrate orally notified plaintiff's counsel that the motion(s) had been granted. The parties agree that the effect of this order was that Dr. Rojkind's deposition was cancelled and that plaintiff would not be permitted to use him as a live witness at trial.

5:03 p.m.: Plaintiff filed memorandum of law opposing the motion to strike. It is not clear whether the magistrate received this before he orally ruled. The memorandum pointed out that it was defendants who had noticed the taking of Dr. Rojkind's deposition for July 19. Plaintiff also called attention that no motion had been made for imposition of sanctions under Rule 37 nor had any Rule 37 order been entered.

July 19, 11:25 a.m. and 12:04 p.m.: Without a hearing and without explanation or statement of reasons, the magistrate entered written orders striking Dr. Rojkind as a witness. One order was one sentence in length, the other one word. The parties agree that the effect of the oral order and these written orders was that Dr. Rojkind's deposition was cancelled and plaintiff would not be permitted to use him as a live witness at trial.

Promptly thereafter plaintiff appealed to the district court from the magistrate's order(s) and requested oral argument. This was denied without argument. Plaintiff moved for clarification, actually a motion for reconsideration, and again asked for oral argument, and, without argument, this was denied. In his pretrial stipulation filed a few days later plaintiff listed Dr. Rojkind as one of his expert witnesses.

Trial began September 12. During trial plaintiff briefly explained the history of the order(s) relating to Dr. Rojkind and expressed his desire to call Dr. Rojkind as a witness in the case against the government. The court declined to revisit the orders previously entered. Plaintiff then elicited testimony concerning emergency room care from Dr. Van Ore, the Board-certified expert in family practice. Dr. Van Ore did not testify in person. When his deposition was taken on July 16 he told counsel that he could not appear at trial. His testimony was presented by means of a video tape made the evening before its presentation at trial.

Under the abuse of discretion standard applicable to review of discovery orders, e.g., *National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976); *Murphy v. Magnolia Electric Power Assn.*, 639 F.2d 232 (5th Cir.1981) (not binding), the district court's refusal to permit the use of Dr. Rojkind as a witness cannot be sustained. The sanction was drastic, for it went to the ability of plaintiff to make out a prima facie case against the government. Neither defendants' motions nor Dr. Pelzer's memorandum cited any relevant authority. Neither the magistrate nor the district court gave reasons or authority for the action taken. It is not even clear under what power the court was seeking to act. Rule 37(b)(2) is not applicable; there had been no failure to cooperate following an order to compel and failure to comply. The Rule 37(b)(2) sanction is incorporated in Rule 16(f), which authorizes the judge on motion or *sua sponte* to impose sanctions for failure to comply with a scheduling or pretrial order, but there had been no apparent violation of a scheduling or pretrial order.

The government has cast about for reasons to support an affirmance as to it. None is convincing. It asserts that it was inconvenienced or prejudiced in its trial preparation because it had been understood among counsel that the extended period of discovery, provided by the court in its order of July 8, was intended by the parties to only embrace "old" experts previously identified and that plaintiff fudged on this understanding by substituting new experts for some of its previously identified experts. Whatever the accuracy of this contention, which is disputed by the opposing party who was shot down without a hearing, no such limitation appears in any order entered by the court. Moreover, defendants had been given Dr. Rojkind's name around July 6–8. Thereafter Dr. Pelzer gave notice (July 12) and the United States gave notice (July 15) that Dr. Rojkind's deposition would be taken at a time and

place selected by them on July 19. Defendants had taken the deposition of Dr. Van Ore on July 16 without raising any question about him or about Dr. Rojkind. Defendants' objections to Dr. Rojkind were not raised until the eve of the deposition that they had noticed and scheduled and until after they had learned that Dr. Van Ore would not testify in person.

The government advances a second theory that, by shuffling his experts during the thirty-day extended period for discovery, plaintiff would have ended up with two experts to testify on the standard of care against the government while the government had elected to use only one expert, and two-against-one is somehow unfair. Plaintiff sued two defendants. Dr. Rojkind was plaintiff's Board-certified expert in the practice, supervision, and administration of hospital emergency rooms, a field relating to the claim against the government. Dr. Van Ore was plaintiff's Board-certified expert in family practice, a field relating to the claim against Dr. Pelzer, who saw Mrs. Brooks in his office and as family physician. No principles of good sense or fairness require a plaintiff to limit his expert testimony to one witness who must give testimony in his Board-certified field and in another field in which he is not Board certified. Indeed, a defendant against whom the claim in the latter field is asserted may well object to the witness as not qualified and argue to the fact-finder that his testimony is entitled to little weight.

The government makes a third argument that July 19 was too late a date to take the deposition of Dr. Rojkind because the pretrial stipulation was due July 23, and it could not be completed until Dr. Rojkind's deposition was available. The short answer to this is that the court's order permitted discovery to be carried on through July 22, and defendants themselves chose the date of July 19.

We need not even pause over the government's suggestion that this court, as an original actor, should impose Rule 37 sanctions.

At the last ditch the government contends that if barring Dr. Rojkind as a witness was error, the error was harmless because Dr. Van Ore was available and gave testimony concerning standards for emergency room care. He has had substantial experience in emergency room care, and almost surely could have qualified as an expert in that field, even if the government had strenuously objected to him.[3] But this does not dispose of the matter. The government, in seeking to obtain a Rule 41(b) dismissal, urged to the trial court that Dr. Van Ore's testimony was "very limited," his review of emergency room records inadequate, and his testimony on causation insufficient.[4] The trial judge rejected the testimony of Dr. Van Ore that the Naval doctor did not fully and accurately complete the required medical records and that he (Dr. Van Ore) was entitled to assume that examinations required under the circumstances but not reflected in the medical records were not performed. From the oral and written or-

**3.** It merely declined to stipulate that he was qualified in that field.

**4.** The government refers us to statements at trial by plaintiff's counsel to the effect that Dr. Van Ore was an expert in emergency room practice, though not Board certified. The remarks were made in opposition to the government's motion for involuntary dismissal. Since plaintiff was required to rely upon only the testimony of Dr. Van Ore, plaintiff could not be expected to concede that Dr. Van Ore was inexpert.

The Government also relies upon plaintiff's answer to interrogatories identifying each of his two experts by his respective Board certification followed by the phrase that he was to testify as to "standard of care required and breach by defendants." The government argues that this is a concession by plaintiff that Dr. Van Ore was an adequate witness on emergency room care. This will not bear the weight the government puts on it. The point was not even raised in the motions and the memorandum filed with the court below. Plaintiff's reference in the singular to a standard of care and to a breach and in the plural to defendants is ambiguous. Plaintiff was entitled at a minimum to a chance to explain whether he intended each expert to testify as to two standards, two breaches and two defendants, or one of each, an opportunity he was never given. Other than this ambiguous statement by plaintiff the record does not support the government's argument that plaintiff was seeking to present two experts to its one.

ders on the Rule 41(b) motion and the motion to dismiss, it comes through clearly that the trial judge was unwilling to accept Dr. Van Ore's testimony. One cannot say how the claim against the government would have fared had Dr. Rojkind been allowed to testify.

Compare this case with *Goforth v. Owens*, 766 F.2d 1533 (11th Cir.1985), in which this court affirmed the dismissal of a case under Rule 16(f) as a sanction for the conduct of plaintiff's counsel. There the district court had found that counsel engaged in a pattern of delay and deliberately refused to comply with the directions of the court. Despite the court's repeated insistence that plaintiff's counsel submit a preliminary statement, counsel failed to do so, and counsel failed to appear for a pretrial conference as an alternative to submitting the preliminary statement. Also, plaintiff's counsel disobeyed the court's instruction to be ready to proceed with trial on a fixed date. All these matters were supported by the record. There are no such events in the present record. Indeed, there are no findings that plaintiff did anything wrong and no explanation of why the court took the action it did, and at every stage the plaintiff was given no opportunity to even contradict the defendant's assertions of what he was said to have done. There are no indications that the court considered any lesser sanction than barring the use of Dr. Rojkind as a witness. The record in *Goforth* supported an implicit finding that a lesser sanction than dismissal would not have served the interests of justice. No such implicit finding is justified in the present case. The gossamer-thin reasons asserted by the government have been described. As it turned out, the July 19 date was some seven weeks before trial.

## II. The directed verdict in favor of Dr. Pelzer

Pursuant to the requirements of Rule 41(b), the trial judge entered findings of fact and conclusions of law relating to the involuntary dismissal of the claim against the United States. As part of the same document the court made findings and gave reasons for granting a directed verdict to Dr. Pelzer. Based on the testimony of Dr. Pelzer and plaintiff's expert, Dr. Van Ore, the court found that Dr. Pelzer was correct in his diagnosis of pneumonia, and it found that he did not have facilities in his office, such as x-ray machines, to identify Mrs. Brooks' particular type of pneumonia, so that hospital testing was necessary. The court further found that Mrs. Brooks refused to enter the hospital, and that, lacking the result of x-rays and tests that would be given in a hospital, Dr. Pelzer did the best he could in prescribing broad spectrum medication. Dr. Van Ore testified for plaintiff that the medication actually prescribed should not have been directed prior to testing. Also he testified that tests which should have been given to type Mrs. Brooks' pneumonia could be conducted at outpatient facilities in the city.

Central to the district court's analysis is a finding that Dr. Pelzer recommended to Mrs. Brooks, and wrote in his records, that she enter the hospital for x-rays and testing and that she refused his recommendation. The court accepted Dr. Pelzer's testimony on this issue. It also accepted his testimony that, after she refused to go to a civilian hospital, he asked if she would return to the Navy Base and this too she refused. The court found that in order to establish that Dr. Pelzer was negligent plaintiff would have to show that after his diagnosis he failed to make appropriate tests to diagnose the type of pneumonia in order to treat it specifically rather than by broad spectrum medication, and that, "based on the uncontroverted evidence ... decedent refused to go to the hospital to get these tests," so that there was no evidence that Dr. Pelzer deviated from the standard of care.

Mrs. Brooks's patient record bore a notation "Rx hospital, patient deferred" and also indicated that Dr. Pelzer wanted to recheck her in a week.

Several problems are presented that require reversal. The district court made a specific finding that Dr. Pelzer was a credible witness and that Dr. Van Ore's testimony was contradictory and inaccurate.

These credibility issues were for a jury to weigh. Second, the evidence is not uncontradicted as to what took place between Dr. Pelzer and Mrs. Brooks concerning the recommendation, and the refusal, of hospital admission. The record entry "Rx hospital, patient deferred" does not by itself indicate whether Dr. Pelzer communicated with Mrs. Brooks concerning hospital admission and, if he did, whether he did so in terms of a recommended procedure or in terms of a medical necessity, nor whether he or Mrs. Brooks was the actor who "deferred" hospital entry. In his testimony Dr. Pelzer interpreted this entry. He testified (Tr. 5, p. 109): "I note that I recommended hospitalization for the patient and that she deferred this, and I wanted to recheck her in a week—recheck one week it says." Dr. Pelzer testified in detail that he wanted to put Mrs. Brooks in the hospital and discussed this with her for quite some time and that she refused to go.

However, evidence was presented that the day after Mrs. Brooks's death Dr. Pelzer was called by a person from the state medical examiner's office, who advised him that Mrs. Brooks had died. Dr. Pelzer testified that he told the caller that Mrs. Brooks was being treated for pneumonia, described the medications he had prescribed, and told the caller that he had recommended to Mrs. Brooks that she be hospitalized. He identified on Mrs. Brooks's record a handwritten note by him dated May 9, 1983 which states:

> Received a call from medical examiner this A.M. He stated he was doing an autopsy on Patricia Brooks and asked what I saw her for.
>
> I told him that she had pneumonia, that I had recommended she be hospitalized and she refused.
>
> I also told him the medication I had prescribed.

Tr. 5, p. 152.

Plaintiff presented the testimony of Jack Cuccia, a legal-medical investigator for the medical examiner's office. He testified that he called Dr. Pelzer the day after Mrs. Brooks's death, and that Dr. Pelzer told him Mrs. Brooks complained of a severe chest cold, coughing, phlegm, that he found evidence of rales in the base of lungs, that blood pressure was normal, and that he prescribed medication and bedrest. Cuccia testified that Dr. Pelzer did not state to him that he recommended to Mrs. Brooks that she go to a hospital, and that if such a statement had been made to him it would have been documented in his report, and that his report contained no such entry.

This evidence raised a jury issue of whether Dr. Pelzer communicated to Mrs. Brooks that she should be hospitalized and what the content was of that communication and who made the decision that hospitalization was "deferred." [5]

Moreover, it is without dispute that, whatever his reasons and whatever his conversations with Mrs. Brooks, Dr. Pelzer prescribed broad spectrum antibiotic medication. Dr. Van Ore testified that this medication should not have been prescribed prior to testing. Dr. Pelzer could not carry out the necessary testing in his office. Even if there were undisputed evidence that Dr. Pelzer recommended that Mrs. Brooks go to a hospital for the tests and that she refused, there would remain a jury issue whether in these circumstances the standard of care was violated by Dr. Pelzer's prescribing the medication that he did prescribe. The trial judge found that Dr. Pelzer acted properly in prescribing without testing, but Dr. Van Ore had testified that he did not.

Finally, there was a jury issue of whether Dr. Pelzer obtained a sufficient medical history. The trial judge found:

> Having made an accurate diagnosis, Dr. Pelzer's failing to obtain an extensive medical history was not unreasonable, given that his primary concern was with

---

5. The sequence of events that Dr. Pelzer said occurred was that he recommended hospitalization and after it was refused prescribed medication. Dr. Van Ore pointed out that on the doctor's record the entry describing medication appeared ahead of the entry concerning hospitalization. Also he testified that a notation on the record to "recheck" in ten days was inconsistent with a diagnosis that Mrs. Brooks was sufficiently ill that she should be hospitalized.

hospitalizing Patricia Brooks and with having proper tests performed.

But Dr. Van Ore considered the medical history to be inadequate. The reasonableness of Dr. Pelzer's actions was for the jury; moreover, the judge's finding of reasonableness was linked to a "primary concern" that, under Dr. Pelzer's testimony, turned out to be unattainable, yet medication was still prescribed, an action that Dr. Van Ore considered inappropriate.

Thus, the court erred in granting a directed verdict on the claim against Dr. Pelzer.

 We reject the contention of plaintiff that, if Mrs. Brooks refused hospitalization, Dr. Pelzer was under a duty of care to notify adult members of her family of her refusal.

REVERSED.